# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | |
|---|---|
| **KASSANDRA D. FITZGERALD, ET AL.** | **CIVIL ACTION NO. 09-1147** |
| **VERSUS** | **JUDGE HICKS** |
| **EXXON MOBIL CORPORATION** | **MAGISTRATE JUDGE HORNSBY** |

## REPORT & RECOMMENDATION

Before the Court are Plaintiffs' Motion for Leave to File First Amended Complaint, Motion to Remand, and Alternative Motion for Voluntary Dismissal Without Prejudice [Doc. No. 7]. For the reasons assigned below, it is recommended that Plaintiffs' Motion to File First Amended Complaint and Motion to Remand be GRANTED, and Plaintiffs' Alternative Motion for Voluntary Dismissal Without Prejudice be DENIED as MOOT.

## Background

In 1955, several landowners executed a lease ("the Williamson Lease") to the Carter Oil Company ("Carter"). The Williamson Lease covers parts of Sections 19, 28, 29, and 30 of Township 15 North, Range 14 West, and parts of Sections 24 and 25 of Township 15 North, Range 15 West, all located in DeSoto Parish, Louisiana. Carter later executed an assignment or partial sublease ("the Sinclair Assignment") of its interest in Section 28 to the Sinclair Oil and Gas Company.

Plaintiffs are successors in title to the original landowners, and current royalty owners of parts of Sections 19, 24, 25, and 30. These parts were retained by Carter, Exxon's predecessor, and were not part of the Sinclair Assignment.

Plaintiffs filed suit in state court alleging that the Williamson Lease lapsed for lack of production or development on the sections covered by the Williamson Lease, excluding Section 28. Exxon removed the case to this court based on diversity jurisdiction. In its Answer, Exxon alleged that production from a well outside of Section 28, but in a unit encompassing the entirety of Section 28, the ROD RA SUG; R. N. HALL #1D ("the Section 28 well"), keeps the Williamson Lease alive by producing in paying quantities. Plaintiffs promptly responded with the motions that are now before the court.

In their Motion to Amend, Plaintiffs seek to add, as indispensable and non-diverse defendants to this case, the successors in interest to the Sinclair Oil and Gas Company and owners of working and overriding royalty interests in parts of Section 28, Stephen D. Cassard, Suzanne Cassard Marks, Ruth Cassard Georgia, John D. Cassard (collectively "the Cassard heirs"), and Donald J. Zadeck ("Zadeck"). In the alternative, Plaintiffs seek voluntary dismissal of this case without prejudice, so that they can pursue these claims in a separately filed state court action.

## Law and Analysis

### A. Indispensable Parties

Plaintiffs assert that the Cassard heirs and Zadeck are indispensable parties who must be joined even if their presence would destroy diversity jurisdiction. See FED. R. CIV. P. 19. "An indispensable party is one whose relationship to the matter in controversy in a suit in equity is such that no effective decree can be entered without affecting his rights." Hilton v. Atlantic Refining Co., 327 F.2d 217, 218-19 (5th Cir. 1964). Working and overriding royalty interest owners with interests in a lease targeted for termination in a lawsuit are indispensable parties to the suit. See id.; Holland

2

v. Questar Exploration and Prod. Co., No. 03-2087, 2006 WL 461127, *4 (W.D. La. Feb. 23, 2006); El Paso v. Crabapple Properties, 2008 WL 2051109 (W.D. La. 2008).

Plaintiffs' initial Petition characterizes the Sinclair Assignment as an assignment rather than a partial sublease. That would render the Williamson Lease divisible under the pre-Mineral Code law. See, e.g. LA. REV. STAT. § 31:3, 31:130, comment; Noel Estate, Inc. v. Murray, 65 So. 2d 886, 887-88 (La. 1953). In its answer, Exxon asserts that the Sinclair Assignment was not an assignment, but a partial sublease that does not divide the Williamson Lease. See LA. REV. STAT. ANN. § 31:127, 31:130. The following indispensable party analysis assumes, as Exxon asserts, that the Sinclair Assignment is a partial sublease rather than an assignment.

The Cassard heirs and Zadeck are indispensable parties within the meaning of Hilton, Holland, and El Paso. Plaintiffs are attempting to terminate the Williamson Lease. The Cassard heirs and Zadeck are owners of working and overriding royalty interests in the Sinclair Assignment. A finding that the Williamson Lease is terminated would necessarily terminate the Sinclair Assignment as well. See LA. REV. STAT. ANN. § 31:126; Brown v. Mayfield, 488 So.2d 322, 324 (La.App. 3rd Cir. 1986) (termination of mineral lessee's rights also terminates rights of sublessee).

Exxon attempts to distinguish Hilton and Holland on the basis that the Cassard heirs and Zadeck have no interest in the property directly at issue in this suit, parts of Sections 19, 24, 25, and 30. Exxon also asserts that Plaintiffs' claims based on a lack of production in paying quantities and a failure to reasonably develop could result in only a partial termination of the Williamson Lease. See Nunez v. Superior Oil Co., 644 F.2d 534, 538 (5th Cir. 1981), Fontenot v. Sunray Mid-Continental Oil Co., 197 So.2d 715, 720-21 (La.App. 3rd Cir. 1967). If so, a partial termination

3

of the Williamson Lease as to only Sections 19, 24, 25, and 30 would not affect the interests of the Cassard heirs or Zadeck.

However, Plaintiffs argue that the Williamson Lease has terminated in its entirety because of a lack of production in paying quantities.[1] "A mineral lease terminates . . . upon the occurrence of an express resolutory condition." LA. REV. STAT. ANN. § 31:133. When a lease terminates for failure to meet a resolutory condition, the termination is immediate and requires no notice of default or judicial determination of dissolution. Kellerman v. Miller, 354 F.2d 46, 47 (5th Cir. 1965), cert. denied, 384 U.S. 951 (1966); Smith v. Sun Oil Co., 135 So. 15, 16 (La. 1931); Caldwell v. Alton Oil Co., 108 So. 314, 316 (La. 1926). The requirement that a lessee produce minerals in paying quantities after the primary term is a resolutory condition, and failure to meet this requirement results in an automatic termination of the lease. LA. REV. STAT. ANN. § 31:124, comment; Parten v. Webb, 1 So.2d 76, 80 (La. 1941); Logan v. Blaxton, 71 So.2d 675, 678 (La.App. 2nd Cir. 1954).

There is a plausible argument in this litigation that the Section 28 well either keeps the entire Williamson Lease alive, or it does not. The Sinclair Assignment is contingent upon a determination of whether the Section 28 well produces in paying quantities. See LA. REV. STAT. § 31:126; Brown, 488 So.2d at 324. Accordingly, the undersigned finds that the interests of the Cassard heirs and Zadeck are put at risk by this litigation so that they are indispensable parties. Therefore, the Motion to Amend to permit their joinder should be granted.

---

[1]Plaintiffs also claim that Exxon failed to reasonably develop the Williamson Lease outside of Section 28. One remedy for breach of this obligation is partial termination. However, these alternative claims would only be at issue if the Court finds that the Sinclair Assignment is a partial sublease and the Section 28 well produces in paying quantities.

**B.     Hensgens Factors**

Even assuming the Cassard heirs and Zadeck are not indispensable parties, the Court may permit or deny joinder.[2] In Hensgens, the Fifth Circuit stated four factors to consider when exercising discretion by adding a non-diverse and non-indispensable party: "(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether plaintiff has been dilatory in asking for amendment, (3) whether plaintiff will be significantly injured if the amendment is not allowed, and (4) any other factors bearing on the equities." Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987); Doleac v. Michalson, 264 F.3d 470, 474 (5th Cir. 2001). The factors balance the original defendant's interest in maintaining a federal forum against the plaintiff's interest in avoiding multiple and parallel litigation. Hengens, 833 F.2d at 1182.

Exxon suggests that Plaintiffs were dilatory and acted with intent to avoid federal court, pointing out that Plaintiffs waited until Exxon removed this case to attempt to add these non-diverse parties. Plaintiffs' counsel denies this allegation, and point to their regular appearances in federal court. Moreover, Plaintiffs' incentive to add the Cassard heirs and Zadeck as defendants was triggered largely by the position taken by Exxon in its post-removal answer: that the Sinclair Assignment is a partial sublease, not an assignment. Plaintiffs acted promptly to join the parties whose interests were put at risk by Exxon's assertion. Plaintiffs would not be significantly injured if the amendment is not allowed, but the interests of the Cassard heirs and Zadeck could be significantly affected if they are not joined as defendants in this case. After consideration of the

---

[2]"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C.A. § 1447(e).

Hensgens factors, the court finds that the best exercise of its discretion is to permit joinder of the Cassard heirs and Zadeck.

**C.      Remand**

Having found that joinder of the Cassard heirs and Zadeck as defendants is proper, the undersigned finds that their joinder destroys diversity. Accordingly, it is recommended that, once the amendment is allowed, this case be remanded to the 42nd Judicial District Court, DeSoto Parish, Louisiana, pursuant to 28 U.S.C.A. § 1447(e).

**D.      Conclusion**

The undersigned finds that the Cassard heirs and Zadeck are indispensable parties, their joinder satisfies the Hensgens factors, and remand is appropriate. Having reached these determinations, the undersigned recommends that the Court find that Plaintiffs' Alternative Motion for Voluntary Dismissal Without Prejudice is moot. Accordingly,

**IT IS RECOMMENDED** that Plaintiffs' Motion to File First Amended Complaint and Motion to Remand be **GRANTED**, and Plaintiffs' Alternative Motion for Voluntary Dismissal Without Prejudice be **DENIED** as **MOOT**.

**OBJECTIONS**

Under the provisions of 28 U.S.C.A. § 636(b)(1)(c) and FED. R. CIV. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under FED. R. CIV. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 7th day of October, 2009.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE